```
 1                    UNITED STATES OF AMERICA
                     EASTERN DISTRICT OF MISSOURI
 2                        EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        )
                                       )
 4              Plaintiff,             )
                                       )
 5         vs.                         )  No. 4:15-CR-404 HEA
                                       )
 6    CHARLES THOMPSON,                )
                                       )
 7              Defendant.             )

 8
                   TRANSCRIPT OF CHANGE OF PLEA HEARING
 9
                   BEFORE THE HONORABLE HENRY E. AUTREY
10                    UNITED STATES DISTRICT JUDGE

11                        January 28, 2020

12
      APPEARANCES:
13
      For Plaintiff:        Mr. Thomas S. Rea
14                          OFFICE OF U.S. ATTORNEY
                            111 S. 10th Street
15                          20th Floor
                            St. Louis, MO  63102
16
      For Defendant:        Mr. Henry Michael Miller, Jr.
17                          GRAND AND MILLER, LLC
                            7733 Forsyth Boulevard
18                          Suite 1850
                            St. Louis, MO  63105
19


20


21    REPORTED BY:          SUSAN R. MORAN, RMR, FCRR
                            Official Court Reporter
22                          111 South 10th Street
                            St. Louis, MO  63102
23                          (314) 244-7983

24
      Proceedings recorded by mechanical stenography, produced by
25    computer-aided transcription.
```

1              (The following proceedings were held in open court

2     on January 28, 2020 at 2:38 p.m.:)

3              THE COURT:  This is the matter of the United States

4     of America versus Charles Thompson, Case No. 4:15-CR-404 HEA.

5     The matter now comes before the Court on notice of change of

6     plea.  The parties, therefore, have provided to the Court a

7     document entitled Guilty Plea Agreement.  That document

8     consists of 19 pages.

9              Defendant now appears in person with counsel,

10    Mr. Henry Miller.  The government appears through Mr. Tom

11    Rea.

12             Mr. Miller, on behalf of the defendant are you ready

13    to proceed?

14             MR. MILLER:  We are, yes, sir.

15             THE COURT:  Mr. Rea, on behalf of the United States

16    are you ready to proceed?

17             MR. REA:  Yes, Your Honor.  Thank you.

18             THE COURT:  Is there an announcement at this time,

19    Mr. Miller?

20             MR. MILLER:  There is, Your Honor.  After extensive

21    discovery and work and discussions in this case leading up to

22    this point, Mr. Thompson would like to withdraw his earlier

23    pleas of not guilty to the charges and enter a plea of guilty

24    today if the Court will so allow.

25             THE COURT:  Very well.  Will you swear in the

```
 1    defendant.

 2              (Defendant sworn.)

 3              THE COURT:  Would you state your full name for the

 4    record, please.

 5              THE DEFENDANT:  Charles Thompson.

 6              THE COURT:  And, Mr. Thompson, did you hear the

 7    statement I made a moment ago?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  And is that a correct statement of why

10    we are in court today?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  So then you understand that before I can

13    accept your plea of guilty there are some questions I have to

14    ask you to be sure your plea is valid.  Okay?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  So in that regard if I say something and

17    you don't understand me, let me know and I'll repeat it or

18    rephrase it.  If I say something and you don't hear me, let

19    me know that and I'll speak louder.  If at any time during

20    this proceeding you need or want to talk to your lawyer, let

21    me know and I'll give you that opportunity.  Okay?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Also keep in mind that you have taken an

24    oath to answer all these questions truthfully, which means

25    your failure to do that could cause the United States to come
```

4

```
 1      back against you with a new indictment for perjury.  Do you

 2      understand that?

 3              THE DEFENDANT:  Yes, sir.

 4              THE COURT:  Any questions about any of that?

 5              THE DEFENDANT:  No, sir.

 6              THE COURT:  How old are you, Mr. Thompson?

 7              THE DEFENDANT:  Thirty-three.

 8              THE COURT:  And how far in school have you gone?

 9              THE DEFENDANT:  I went to the 11th at Sumner High

10      School, and then I went to -- I mean, I did GED in Pacific

11      prison through St. Louis University.

12              THE COURT:  And did you get your GED?

13              THE DEFENDANT:  Yes.

14              THE COURT:  And about when was that?

15              THE DEFENDANT:  2012 or '13 at Eastern District

16      Reception Diagnostic Center.

17              THE COURT:  Okay.  Good.  Do you have any difficulty

18      hearing?

19              THE DEFENDANT:  No.

20              THE COURT:  Do you have any difficulty speaking or

21      understanding English?

22              THE DEFENDANT:  No.

23              THE COURT:  Have you taken any kind of medication

24      before coming to court today that might keep you from

25      understanding what's going on in court today?
```

```
 1                    THE DEFENDANT:  No.

 2                    THE COURT:  Have you used any alcohol or drugs

 3       before coming to court today?

 4                    THE DEFENDANT:  No.

 5                    THE COURT:  Have you used any alcohol or drugs in

 6       the last 36 hours?

 7                    THE DEFENDANT:  No.

 8                    THE COURT:  Have you ever been treated for having or

 9       diagnosed as having any type of mental illness or mental

10       disease?

11                    THE DEFENDANT:  No.

12                    THE COURT:  Have you ever used or taken any type of

13       medication without prescription that might typically be used

14       to treat mental illness or mental disease?

15                    THE DEFENDANT:  No.

16                    THE COURT:  How are you feeling today, Mr. Thompson?

17                    THE DEFENDANT:  I'm okay.

18                    THE COURT:  In your own words tell me why you've

19       come to court today.  What do you want to do?

20                    THE DEFENDANT:  I was changing my plea of not guilty

21       to guilty.

22                    THE COURT:  All right.  You know of any reason,

23       Mr. Miller, why the Court should not conclude your client

24       competent to proceed at this time?

25                    MR. MILLER:  No, sir.
```

6

1          THE COURT:  Mr. Rea?

2          MR. REA:  No, Your Honor.

3          THE COURT:  Let the record then reflect that upon

4    examination of the defendant and upon inquiry of counsel as

5    well as the Court's observation of the defendant during this

6    part of the colloquy, the Court concludes that the defendant

7    is competent to proceed at this time.

8          Having so concluded, the Court will proceed with a

9    review of the requirements of Local Rule 13.05.

10          (Pursuant to Rule 13.05, a conference was held on

11    the record and placed under seal; after which the following

12    proceedings continued in open court:)

13          THE COURT:  Having done so, Mr. Thompson, have you

14    had the opportunity to meet with your lawyer and talk with

15    him about your case?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do you feel that you've had

18    sufficient time and ample opportunity to meet with him and

19    talk with him?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And during those times that you have met

22    with Mr. Miller, has he given you advice regarding your case?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you satisfied with all of the advice

25    that he has given you?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  Has he answered all of your questions

3    fully, completely, and to your satisfaction?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Is there anything that you needed to

6    know about your case or that you wanted to know about your

7    case that still confuses you?

8              THE DEFENDANT:  No.

9              THE COURT:  Is there anything at all about your case

10   that you still do not understand?

11             THE DEFENDANT:  No.

12             THE COURT:  Were there any witnesses that you wanted

13   your lawyer to contact or that he should have contacted but

14   did not contact for you?

15             THE DEFENDANT:  No, he did everything.

16             THE COURT:  Was there any investigation that you

17   wanted him to do or that he should have done for you that he

18   didn't do?

19             THE DEFENDANT:  No, he did it.

20             THE COURT:  Was there any information that you

21   wanted him to get from the government regarding your case or

22   that he should have gotten from the government about your

23   case that he didn't get?

24             THE DEFENDANT:  No.

25             THE COURT:  Was there anything at all that you
```

1    wanted your lawyer to do for you in this case that he has

2    failed to do or refused to do in your behalf?

3              THE DEFENDANT:  No.

4              THE COURT:  Are you fully satisfied with all the

5    work that Mr. Miller has done for you?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you have any complaints against him

8    as your attorney?

9              THE DEFENDANT:  No.

10             THE COURT:  And do you understand that when you

11   plead guilty today it means you're giving up your right to a

12   trial by jury?

13             THE DEFENDANT:  Yeah.

14             THE COURT:  Do you understand that the Constitution

15   and laws of this nation guarantees you the right to have your

16   case decided by a jury of 12 impartial citizens?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And did you talk to your lawyer about

19   all of that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And as a result of that discussion have

22   you now concluded that you do want to give up your right to a

23   trial by jury and plead guilty here today?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  You understand, though,

1    Mr. Thompson, that if you did go to trial you would be

2    presumed innocent and it would be the obligation of the

3    United States to prove you guilty beyond a reasonable doubt

4    by competent evidence?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you further understand that you would

7    not be required to put on any kind of evidence to prove

8    yourself innocent?

9              THE DEFENDANT:  Yes.

10             THE COURT:  You also understand that if you were to

11   go to trial you would have the right to confront any and all

12   witnesses that the United States might have against you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And in that regard you understand you

15   would then be able to cross-examine those witnesses as they

16   testified in open court, under oath, and in front of a jury?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you further understand that at trial

19   you would have the ability to object to any and all evidence

20   that the government might attempt to introduce against you?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And do you understand you would also

23   have the ability to present evidence in your own defense or

24   otherwise if you so chose, but the law does not require you

25   to put on any kind of evidence for any purpose?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Do you also understand that if you were

3  to go to trial you would have the right to testify or not

4  testify?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And do you understand that if you

7  decided that you did not want to testify in the case, the

8  fact that you did not testify could not be used by anyone for

9  any purpose?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Any questions so far?

12            THE DEFENDANT:  No.

13            THE COURT:  All right.  And do you further

14  understand, Mr. Thompson, that if you go forward with your

15  plea of guilty here today and if I accept your plea of

16  guilty, I will enter a judgment finding you guilty beyond a

17  reasonable doubt and impose a sentence on some future date?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you understand that whatever sentence

20  I impose is entirely up to me?

21            THE DEFENDANT:  Yes.

22            THE COURT:  And do you understand that that's true

23  even though you might have some agreement between yourself

24  and the United States on things regarding sentencing?

25            THE DEFENDANT:  Yes.

1           THE COURT:  And, finally, do you understand that

2   when you plead guilty here today it means you're giving up

3   your right to not incriminate yourself under the Fifth

4   Amendment of the Constitution of the United States because

5   you will have to admit the facts that establish the basis for

6   the crime as well as admit the crime itself?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And is that what you want to do here

9   today?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  In relation to the charges

12  that bring you here today, Mr. Thompson, have you had the

13  opportunity to review the indictment in this case with your

14  lawyer?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And as a result of that review are you

17  satisfied that you understand everything in the indictment?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you have any questions about anything

20  in the indictment?

21          THE DEFENDANT:  No.

22          THE COURT:  Are you also aware of the range of

23  punishment that applies to the charges in the indictment?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And did you talk about that with your

12

1    lawyer as well?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Any questions about the range of

4    punishment?

5              THE DEFENDANT:  No.

6              THE COURT:  For the record, Mr. Rea, what's the

7    applicable range of punishment here?

8              MR. REA:  Judge, Mr. Thompson is pleading guilty to

9    Counts 14 through 18.  As it relates to Count 14, the maximum

10   possible penalty provided by the law is a term of

11   imprisonment of not less than five years and not more than 40

12   years, a fine of not more than $5 million, or both such

13   imprisonment and fine.  The Court shall also impose a period

14   of supervised release of not less than four years and not

15   more than life.  The defendant understands as it relates to

16   Count 14, the crime to which he's pleading guilty has a

17   mandatory term of imprisonment of at least five years.

18              Counts 15, 16, 17, and 18 all have the same

19   applicability.  The defendant understands the maximum

20   possible penalty provided by law for each one of those counts

21   is imprisonment of not less than ten years nor more than life

22   consecutive to any other sentence imposed, a fine of not more

23   than $250,000, or both such imprisonment and fine.  The Court

24   shall impose a period of supervised release of not less than

25   three years nor more than life for each of Counts 15, 16, 17,

1    and 18.  And, again, as it relates to those four counts

2    there's a mandatory minimum term of imprisonment of at least

3    ten years imprisonment to be served consecutive to any other

4    sentence imposed.  And as it relates to each one of the

5    counts to which Mr. Thompson is pleading guilty, there is a

6    $100 mandatory special assessment.

7           Thank you, Your Honor.

8           THE COURT:  Thank you.  With respect to the

9    consecutive nature of the sentences, Mr. Rea, so that the

10   record is clear, Counts 15, 16, 17, and 18 necessarily have

11   to be run consecutive to any other counts so they would be

12   run consecutive necessarily to Count 14?

13          MR. REA:  And each other.

14          THE COURT:  And each other.  That's the

15   clarification I was looking for.  Thank you.

16          Did you hear all of that, Mr. Thompson?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  And is there anything that

19   was said just now by Mr. Rea or by me for clarification that

20   surprised you in any way?

21          THE DEFENDANT:  No.

22          THE COURT:  Is anyone forcing you to plead guilty

23   today?

24          THE DEFENDANT:  No.

25          THE COURT:  Has anyone threatened you to make you

1   plead guilty?

2          THE DEFENDANT:  No.

3          THE COURT:  Has anyone promised you anything in

4   exchange for your plea of guilty today?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anyone made threats against close

7   friends or family members to make you plead guilty today?

8          THE DEFENDANT:  No.

9          THE COURT:  Have any of your close friends or family

10  members threatened you or otherwise coerced you into pleading

11  guilty for some reason?

12         THE DEFENDANT:  No.

13         THE COURT:  Are you then pleading guilty voluntarily

14  and of your own free will because that is what you want to do

15  in this case?

16         THE DEFENDANT:  Yes.

17         THE COURT:  When we started out, Mr. Thompson, I

18  made a reference to the Guilty Plea Agreement, the last page

19  of which shows your name in print with a signature above the

20  printed name of Charles Thompson.  Is that your signature?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And before you signed this document on

23  page 19 did you review it in its entirety with your lawyer --

24         THE DEFENDANT:  Yes.

25         THE COURT:  -- and talk about the Guilty Plea

1     Agreement with him in detail?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And as a result of that review and

4     discussion are you satisfied that you understand everything

5     that's set out in this 19-page Guilty Plea Agreement?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you have any questions about anything

8     in the Guilty Plea Agreement?

9              THE DEFENDANT:  No.

10             THE COURT:  Mr. Rea, if you would, would you tell

11    the substance of the Guilty Plea Agreement as it relates to

12    the rights and obligations of the parties.  Listen carefully,

13    Mr. Thompson.  When he's finished I'm going to have some

14    questions for you.  And then after that we'll talk about the

15    facts in relation to the charges in the indictment that you

16    intend to plead guilty to.  And then I'll have some questions

17    for you after that too.  Okay.  All right.  Mr. Rea.

18             MR. REA:  Thank you, Your Honor.  The 19-page

19    document contains 12 numbered sections.

20             Section 1 identifies the parties to the agreement.

21    It also notes that the Court is neither a party to nor bound

22    by the agreement.

23             Section 2 summarizes the sum and substance of the

24    guilty plea.  Among other things in exchange for

25    Mr. Thompson's guilty plea to Counts 14 through 18, the

1    United States agrees that no further federal prosecution will

2    be brought in this district relative to Mr. Thompson's

3    conspiracy to distribute cocaine, discharge of a firearm in

4    furtherance of drug trafficking where death results, and

5    discharge of a firearm in furtherance of drug trafficking as

6    has been charged in the fifth superseding indictment of which

7    the government is aware of at this time.

8            Under the plea agreement either party is permitted

9    to request a sentence above or below the Sentencing Guideline

10   range.

11           Section 3 sets forth the specific elements of each

12   count to which Mr. Thompson is pleading guilty.

13           Section 4 sets forth a statement of relevant facts

14   which will be discussed in greater detail here with the Court

15   shortly.

16           Section 5 sets forth the statutory penalties which

17   have previously been announced here in open court.

18           Section 6 sets forth the parties' anticipated

19   application of the various Sentencing Guidelines to

20   Mr. Thompson's case.

21           Section 7 sets forth the waiver of appeal and post-

22   conviction rights.

23           Section 8 lists a number of additional provisions

24   contained within the agreement, among others discusses

25   disclosures to be made to the probation office, the fact that

1    other administrative or civil actions are not barred by

2    virtue of this Guilty Plea Agreement, detailed supervised

3    release and the need of the mandatory special assessment,

4    fines, restitution, and costs as well as forfeiture of any

5    items seized.

6              Moving on to Section 9 sets forth acknowledgment and

7    waiver of defendant's rights.

8              Section 10 identifies the voluntary nature of this

9    guilty plea and plea agreement.

10             Section 11 details the consequences of any post-plea

11   misconduct.

12             Section 12 sets forth that there is no right to

13   withdraw this guilty plea once it has been entered.

14             And as the Court noted, this document has been

15   executed by the parties on January 28th, 2020, on page 19 of

16   the document.

17             Thank you, Your Honor.

18             THE COURT:  Thank you.  Did you hear everything that

19   Mr. Rea just said regarding the Guilty Plea Agreement?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And is there anything that he said

22   regarding the Guilty Plea Agreement just now that came as a

23   surprise to you?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  The Court will then approve of the

1    Guilty Plea Agreement as set forth on the record.

2           Mr. Thompson, has anybody given you a prediction or

3    given you a promise regarding what your sentence from me is

4    going to be?

5           THE DEFENDANT:  No.

6           THE COURT:  And, again, you understand that whatever

7    that sentence is, it's entirely up to me?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And with that in mind do you still want

10   to go forward with your Guilty Plea Agreement here today?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  Tell us then if you would, Mr. Rea, what

13   the evidence would have been if the matter had gone to trial

14   that would establish a basis for each charge, the relevant

15   conduct of the defendant, and a basis by which one might

16   conclude defendant guilty beyond a reasonable doubt as to

17   each Count 14 through 18 individually and collectively.

18          MR. REA:  And just because of the nature of this

19   proceeding and future proceedings, the government is required

20   to read in the statement of facts in its entirety, so I'd

21   just ask the Court's indulgence while I do so in that regard.

22          THE COURT:  Certainly.

23          MR. REA:  Thank you, Judge.  The defendant is

24   originally from an area in St. Louis commonly known as the

25   "Blumeyer."  Defendant was familiar with Anthony Jordan.  The

1   defendant understood Anthony Jordan to be a drug trafficker.

2   Defendant was also familiar with Michael Brooks, Anthony

3   Miller, Darwin Anderson, and Lawrence Richardson, each of

4   whom defendant understood to be involved in drug trafficking.

5   Defendant also knew that each of these individuals possessed

6   and used firearms in furtherance of their respective drug

7   trafficking.

8          Prior to 2012, Anthony Jordan and his associates,

9   including Michael Brooks, supplied kilogram quantities of

10  cocaine to members of the Blumeyer including, but not limited

11  to, Montez Woods.  Montez Woods, in turn, would supply

12  cocaine to other Blumeyer members, including Anthony

13  Anderson.  Defendant understands that, on at least one

14  occasion, Anthony Anderson was robbed of cocaine that had

15  originated from Anthony Jordan.  Neither Anthony Anderson nor

16  Montez Woods repaid Michael Brooks or Anthony Jordan for the

17  cocaine supplied but taken.

18          On or about May 20, 2012, Anthony Jordan and Michael

19  Brooks murdered Montez Woods.  With the death of Montez

20  Woods, Anthony Anderson became the predominant drug

21  trafficker within the Blumeyer.  On or about June 2nd, 2013,

22  Michael Brooks was killed by members of the Blumeyer in

23  retaliation for the murder of Montez Woods.  Individuals

24  directly responsible for the death of Michael Brooks

25  included, but were not limited to, Anthony Anderson and

1    Terrell Beasley.

2            Defendant was incarcerated from approximately

3    May 2006 to November 2014.

4            Among other things, defendant desired to be a

5    significant drug trafficker within the St. Louis area upon

6    his release.  Anthony Jordan was his best primary source of

7    drug supply once defendant was released.  Anthony Jordan was

8    an individual who could eliminate potential drug trafficking

9    competition within the Blumeyer through acts of violence

10   Anthony Jordan and his associates would commit.  To that end,

11   the defendant, acting with others, provided information to

12   assist Anthony Jordan in successfully committing acts of

13   violence with one or more firearms which, in turn, provided

14   defendant with greater ability to spearhead drug trafficking

15   activities within the St. Louis area once defendant was

16   released from prison.

17           Defendant utilized other individuals such as Gloria

18   Ward and Lawrence Richardson to convey information to Anthony

19   Jordan and others.  On at least one occasion, defendant sent

20   a handwritten letter to Anthony Jordan via Gloria Ward.  (The

21   letter was not mailed directly to Anthony Jordan.)  Defendant

22   also had frequent telephone communication with Gloria Ward.

23   On at least one occasion, defendant was aware that Anthony

24   Jordan was present with Gloria Ward while defendant and

25   Gloria Ward spoke and that Anthony Jordan was listening to

the content of their telephone conversation.  Defendant

commonly referred to Anthony Jordan as "T.T." -- the letters

T and T -- "Godfather," and "Bruh."  The information

defendant provided was typically obtained by defendant

directly from his associates within the Blumeyer or based on

information defendant knew about the habits and customs of

his associates within the Blumeyer.

Anthony Jordan, Anthony Jordan's associates, or

individuals acting on Anthony Jordan's behalf would place

money on defendant's correctional facility bank account.  A

name commonly used by Anthony Jordan or his associates when

placing money on defendant's correctional facility bank

account was "Jason Smith."

Defendant specifically sought the death of Anthony

Anderson for, among other reasons, Anthony Anderson's

involvement in the drug robberies which, in turn, resulted in

the deaths of Montez Woods and Michael Brooks.  The killing

of Michael Brooks resulted in Anthony Jordan killing multiple

individuals associated with the Blumeyer area by use of a

firearm.

Further, the defendant viewed Anthony Anderson as

one of the predominant drug traffickers within the Blumeyer.

Defendant wanted Anthony Jordan and his associates to kill

Anthony Anderson so defendant could be the primary drug

trafficker within the Blumeyer and beyond once released from

1    prison.  To that end, defendant, acting with others, provided

2    specific information to Anthony Jordan about Anthony

3    Anderson.  Anthony Jordan was directly involved in the

4    shooting of Anthony Anderson on December 23rd, 2013, in the

5    City of St. Louis.

6           Similarly, defendant specifically identified Terrell

7    Beasley as one of the individuals directly involved in the

8    murder of Michael Brooks and someone who continued to pose a

9    threat to Anthony Jordan.  Defendant provided the identity of

10   Terrell Beasley for the purpose of, and with the

11   understanding that, Anthony Jordan would kill Terrell Beasley

12   by use of a firearm.  With Terrell Beasley eliminated, the

13   defendant believed that the defendant would have greater

14   ability to spearhead drug trafficking activities within the

15   St. Louis area once defendant was released from prison.

16   Further, victim Terrell Beasley was also targeted in

17   retaliation for the June 2012 Brooks' murder and to

18   preemptively eliminate a potential Blumeyer member who might

19   seek to harm Anthony Jordan and his associates.  Anthony

20   Jordan was directly involved in the shootings of Terrell

21   Beasley on July 1, 2013, and August 8, 2013, in the City of

22   St. Louis.

23          The defendant specifically identified Robert Parker

24   as a threat to Anthony Jordan.  Defendant provided the

25   identity of Robert Parker for the purpose of, and with the

1    understanding that, Anthony Jordan would kill Robert Parker

2    by use of a firearm.  With Robert Parker eliminated,

3    defendant believed defendant would have greater ability to

4    spearhead drug trafficking activities within the St. Louis

5    area once defendant was released from prison.

6          Victim Parker was associated with the Blumeyer.

7    Among other things, victim Parker was also targeted in

8    retaliation for the June 2012 Brooks' murder and to

9    preemptively eliminate a potential Blumeyer member who might

10   seek to harm Anthony Jordan and his associates.  Prior to

11   victim Parker's murder, defendant, acting with others,

12   provided Anthony Jordan information about victim Parker which

13   directly assisted Anthony Jordan in successfully carrying out

14   the murder.  Jordan shot and killed victim Parker with malice

15   aforethought and premeditation on or about December 29, 2013,

16   within the City of St. Louis.  Therefore, Anthony Jordan's

17   killing of victim Parker was murder in the first degree.

18   During the course of shooting victim Parker, one or more

19   bullets discharged during the shooting entered the apartment

20   of victim Clara Walker striking her and killing her.

21          Defendant was aware that Michail Gridiron was a

22   threat to Anthony Jordan.  Defendant provided the location of

23   Gridiron for the purpose of, and with the understanding that,

24   Anthony Jordan would kill Gridiron by use of a firearm.  With

25   Gridiron eliminated, defendant believed defendant would have

1    greater ability to spearhead drug trafficking activities

2    within the St. Louis area once defendant was released from

3    prison.

4           Victim Gridiron was associated with the Blumeyer.

5    Among other things, Gridiron was also targeted in retaliation

6    to the June 2012 Brooks' murder and to preemptively eliminate

7    a potential Blumeyer member who might seek to harm Anthony

8    Jordan and his associates.  Prior to Gridiron's murder, the

9    defendant acting with others, provided Anthony Jordan

10   information about victim Gridiron which directly assisted

11   Anthony Jordan in successfully carrying out the murder.

12   Further, the defendant, acting with others, told Anthony

13   Jordan that Gridiron and others were seeking to affirmatively

14   harm Darwin Anderson and were taking proactive steps to

15   locate and harm Darwin Anderson.  Darwin Anderson was Michael

16   Brooks' and Gloria Ward's cousin.  Defendant provided this

17   information with the belief that it would increase the speed

18   with which Anthony Jordan sought to murder Gridiron and

19   others.

20          Anthony Jordan shot and killed victim Gridiron with

21   malice aforethought and premeditation on or about January 21,

22   2014 within the City of St. Louis.  Therefore, Anthony

23   Jordan's killing of victim Gridiron was murder in the first

24   degree.

25          Defendant understood Dion Stovall to be providing

1   money, firearms, and other support to members of the Blumeyer

2   who were interested in retaliating against Anthony Jordan for

3   his repeated acts of violence against the Blumeyer group.

4   Defendant specifically identified Dion Stovall as a target

5   for Anthony Jordan.  Defendant provided the identity of Dion

6   Stovall for the purpose of, and with the understanding that,

7   Anthony Jordan would kill Dion Stovall by use of a firearm.

8   With Dion Stovall eliminated, defendant believed defendant

9   would have greater ability to spearhead drug trafficking

10  activities in the St. Louis area once defendant was released

11  from prison.  Anthony Jordan was directly involved in the

12  murder of Dion Stovall on March 5th, 2014 in the City of St.

13  Louis.

14          Once released from the Missouri Department of

15  Corrections, defendant met on at least one occasion with

16  Anthony Jordan and others to discuss, among other things,

17  Anthony Jordan or his associates serving as a source of drug

18  supply for defendant.  Anthony Jordan also provided sums of

19  money and other items of value to the defendant.

20          In March 2015, defendant purchased seven ounces of

21  heroin from Anthony Jordan for approximately $1,650 per

22  ounce.  Defendant also purchased heroin and cocaine from

23  Anthony Jordan's associate, Anthony Miller, for approximately

24  $1,650 and $1,000 per ounce, respectively, as well as

25  marijuana for between approximately $2,600 to $3,400 per

pound based on the marijuana's quality.  Defendant believed that Anthony Jordan was the source of supply for Anthony Miller's cocaine.  The defendant also traveled with Anthony Jordan, and sometimes others, to locations such as Phoenix, Arizona and Panama City, Florida for the purpose of establishing additional sources of supply.  By virtue of this plea agreement, the defendant admits that the amount of cocaine for which he may be held accountable is in excess of 500 grams.

Shortly after Anthony Jordan provided the defendant heroin, the defendant was robbed of the heroin and money. Following the robbery, Jordan provided firearms to the defendant.  Defendant understood that Anthony Jordan wanted defendant to use the firearms to protect defendant's drug trade and, by extension, the drugs supplied to defendant by Anthony Jordan.

Anthony Jordan was commonly in the possession of two .40 caliber semiautomatic pistols or two .45 caliber semiautomatic pistols.  Anthony Jordan also commonly possessed larger firearms.  Anthony Jordan drove multiple different vehicles, including rental vehicles.  Anthony Jordan routinely rented vehicles from a specific female associate working for a specific rental car company located in the St. Louis area.

Anthony Jordan showed the defendant photographs of

27

1   information that he, that being Anthony Jordan, compiled

2   while in the process of attempting to harm various

3   individuals.

4           On more than one occasion, Anthony Jordan showed

5   defendant information on one or more mobile phones about

6   individuals Anthony Jordan had killed.  Jordan separately

7   advised defendant that he had unique access to deceased

8   individuals.  One such deceased individual to whom Anthony

9   Jordan had unique access was an individual identified by the

10  initials T.B.  Among other things, Anthony Jordan described

11  to the defendant that he wanted T.B.'s body to be created so

12  that T.B. could not have a proper funeral or burial, and that

13  he (Anthony Jordan) "smacked" T.B. in the face while T.B.'s

14  body was being stored within a specific funeral home.

15  Anthony Jordan showed photos of T.B.'s body to the defendant.

16          On various occasions, Anthony Jordan also showed

17  additional photographs and/or videos of acts of violence and

18  deceased individuals including, but not limited to, Michael

19  Aiken; Deandre Thomas; and surveillance footage taken in and

20  during the course of the murder of Orlando Jones on

21  December 18, 2004.

22          Your Honor, this is a summary of the relevant facts

23  the United States of America has in relation to this

24  defendant.  It is also the statement of facts that is set

25  forth under Section 4 of the parties' Plea Agreement covering

1  pages 4 through 10 of that agreement.

2         Thank you, Your Honor.

3         THE COURT:  Thank you.  Mr. Thompson, did you hear

4  all those facts stated by Mr. Rea as they relates to Counts

5  14, 15, 16, 17, and 18?

6         THE DEFENDANT:  Yes.

7         THE COURT:  And as to each of those counts, are

8  those facts true and correct?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Regarding Count 14, beginning at a time

11 unknown but up to and including 2012 through and including

12 January 29th, 2016 within the Eastern District of Missouri

13 and elsewhere, did two or more persons reach an agreement or

14 come to an understanding to distribute cocaine?

15        THE DEFENDANT:  Yes.

16        THE COURT:  And did you voluntarily and

17 intentionally join in the agreement or understanding either

18 at the time it was first reached or at some later time while

19 it was still in effect?

20        THE DEFENDANT:  Yes.

21        THE COURT:  At the time you joined in the agreement

22 or understanding, did you know the purpose of the agreement

23 or understanding?

24        THE DEFENDANT:  Yes.

25        THE COURT:  And did the agreement or understanding

1    involve cocaine?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And was the quantity of cocaine involved

4    in excess of 500 grams?

5              THE DEFENDANT:  Yes.

6              THE COURT:  How do you plead regarding Count 14?

7              THE DEFENDANT:  Guilty.

8              THE COURT:  As to Count 15, did you commit the crime

9    of conspiracy to distribute cocaine?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And did you acting with Anthony Jordan,

12   Gloria Ward, and others knowingly possess a firearm in

13   furtherance of that crime?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And did you acting with Anthony Jordan,

16   Gloria Ward and others discharge the firearm?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And did you acting with Anthony Jordan,

19   Gloria Ward and others use a firearm to cause the death of

20   Robert Parker, which was murder?

21             MR. MILLER:  One second, Your Honor?

22             THE COURT:  Uh-huh.

23             (There was a discussion held off the record between

24   Mr. Miller and the defendant.)

25             THE DEFENDANT:  Yes.

1          THE COURT:  How do you plead regarding Count 15?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  As to Count 16, did you commit the crime

4     of conspiracy to distribute cocaine?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And did you acting with Anthony Jordan,

7     Gloria Ward and others knowingly possess a firearm in

8     furtherance of that crime?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Did you acting with Anthony Jordan,

11    Gloria Ward and others discharge the firearm?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And did you acting with Anthony Jordan,

14    Gloria Ward and others use the firearm to cause the death of

15    Clara Walker, which was murder?

16         THE DEFENDANT:  Yes.

17         THE COURT:  How do you plead to Count 16?

18         THE DEFENDANT:  Guilty.

19         THE COURT:  As to Count 17, did you commit the crime

20    of conspiracy to distribute cocaine?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And did you acting with another, Anthony

23    Jordan, Gloria Ward and others knowingly possess a firearm in

24    furtherance of that crime?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Did you acting with Anthony Jordan,

2    Gloria Ward and others discharge the firearm?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Did you acting with Anthony Jordan,

5    Gloria Ward and others use the firearm to cause the death of

6    Michail Gridiron, which was murder?

7          THE DEFENDANT:  Yes.

8          THE COURT:  How do you plead to Count 17?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  As to Count 18, did you commit the crime

11    of conspiracy to distribute cocaine?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And did you acting with Anthony Jordan,

14    Gloria Ward and others knowingly possess a firearm in

15    furtherance of that crime?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And did you acting with Anthony Jordan,

18    Gloria Ward and others discharge the firearm?

19          THE DEFENDANT:  Yes.

20          THE COURT:  How do you plead regarding Count 18?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  Do you know of any reason, Mr. Miller,

23    why I should not accept your client's pleas of guilty

24    regarding Counts 14 through 18 inclusive?

25          MR. MILLER:  No, sir.

1    THE COURT:  Do you know of any reason, Mr. Rea?

2    MR. REA:  No, Your Honor, but could we make one

3    correction to the document that is before the Court at this

4    time?

5    THE COURT:  Yes.

6    MR. REA:  If you look at page 3, the elements of

7    Count 17.

8    THE COURT:  Page 3, yes.

9    MR. REA:  If you look at the last line before the

10   elements are listed, that is a count number that relates to

11   the fourth superseding indictment.  This relates to the fifth

12   superseding indictment.  We would like to change that number

13   to 17 to make sure it's consistent, please.

14   THE COURT:  So the paragraph referencing Count 17 in

15   bold?

16   MR. REA:  Yes, Your Honor.

17   THE COURT:  The last line before the elements should

18   read crime as charged in count what?

19   MR. REA:  Seventeen.

20   THE COURT:  Seventeen.

21   MR. REA:  Yes, Your Honor.

22   THE COURT:  Rather than Count 9?

23   MR. REA:  Correct, Your Honor.

24   THE COURT:  And if you all would initial it, the

25   correction.

1          MR. MILLER:  Thank you, Judge.

2          MR. REA:  Thank you, Your Honor.

3          THE COURT:  Uh-huh.  The correction having been made

4    by interlineation and the parties to the Guilty Plea

5    Agreement having initialed the correction, the Court will now

6    enter its order, findings, and judgment as to each count; 14,

7    15, 16, 17, and 18.  That the defendant is entering each plea

8    of guilty knowingly, voluntarily, and of his own free with

9    full understanding of the nature and consequences of each

10   plea of guilty, and furthermore that he is knowingly and

11   voluntarily waiving his right to a trial by jury and all

12   rights incident thereto as they relate to each count, further

13   finding that the defendant is fully cognizant of the range of

14   punishment applicable as to each count; 14, 15, 16, 17, and

15   18.  The Court now accepts defendant's pleas of guilty to

16   Counts 14, 15, 16, 17, and 18 and enters its judgment finding

17   the defendant guilty beyond a reasonable doubt as to Count

18   14; guilty beyond a reasonable doubt as to Count 15; guilty

19   beyond a reasonable doubt as to Count 16; guilty beyond a

20   reasonable doubt as to Count 17; and guilty beyond a

21   reasonable doubt as to Count 18.

22          Mr. Thompson, I'm going to order a presentence

23   investigation report.  Sentencing is going to be set at this

24   time for April the 29th at two o'clock in the afternoon.

25   Okay.

1          Anything else, Mr. Miller?

2          MR. MILLER:  No, sir.

3          THE COURT:  Mr. Rea?

4          MR. REA:  No, Your Honor.  Thank you for your time.

5          THE COURT:  Thank you.  That will conclude this

6   proceeding.  We'll see you back here on April the 29th,

7   Mr. Thompson.

8          MR. MILLER:  Thank you, Your Honor.

9          THE COURT:  Thank you, Mr. Miller.

10          (Court in recess at 3:13 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2              I, Susan R. Moran, Registered Merit Reporter, in

3    and for the United States District Court for the Eastern

4    District of Missouri, do hereby certify that I was present

5    at and reported in machine shorthand the proceedings in the

6    above-mentioned court; and that the foregoing transcript is

7    a true, correct, and complete transcript of my stenographic

8    notes.

9              I further certify that I am not attorney for, nor

10   employed by, nor related to any of the parties or attorneys

11   in this action, nor financially interested in the action.

12             I further certify that this transcript contains

13   pages 1 - 35 and that this reporter takes no responsibility

14   for missing or damaged pages of this transcript when same

15   transcript is copied by any party other than this reporter.

16             IN WITNESS WHEREOF, I have hereunto set my hand

17   at St. Louis, Missouri, this 7th day of February, 2020.

18

19                          _____

20                          /s/ Susan R. Moran
                            Registered Merit Reporter

21

22

23

24

25